**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CHARLES SCOTT MERRILL, JR.,

Plaintiff,

v. No. 1:25-cv-00497-JHR

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

**MEMORANDUM OPINION AND ORDER**[1]

Before the Court is Plaintiff Charles Scott Merrill Jr.'s Opposed Motion to Reverse and Remand (Doc. 9) ("Motion"), filed October 10, 2025. Defendant the Commissioner of the Social Security Administration ("SSA") filed a response to the Motion on December 31, 2025, and on February 8, 2026, Plaintiff filed a reply. (Docs. 19, 24.) Having considered the parties' submissions, the record, and the relevant law, and for the reasons described below, the Court will GRANT Plaintiff's Motion and REMAND the matter to the Commissioner for further proceedings.

## I. BACKGROUND

Plaintiff filed a claim for supplemental security income ("SSI") under Title XVI of the Social Security Act on April 4, 2022. (AR 83, 220-230.) He alleged disability beginning on April 1, 2021, due to conditions that included post-traumatic stress disorder (PTSD), manic depression, and anxiety. (AR 83.) The SSA denied Plaintiff's claim initially and on reconsideration. (AR 114-118, 123-126.) On Plaintiff's request, Administrative Law Judge ("ALJ") Michael Sauve held a telephonic hearing on May 29, 2024, at which Plaintiff and a vocational expert ("VE") testified. (AR 133, 38-72.) On August 1, 2024, the ALJ issued a decision denying Plaintiff's claim for

[1] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the undersigned to conduct dispositive proceedings and order the entry of final judgment in this case. (Docs. 7, 13.)

benefits, and on April 23, 2025, the SSA's Appeals Council denied Plaintiff's request for review. (AR 1-3, 14-31.) Plaintiff appealed the agency's decision to this Court on May 27, 2025. (Doc. 1.)

## II. THE ALJ'S DECISION

The ALJ reviewed Plaintiff's claim for SSI pursuant to the SSA's five-step sequential evaluation process ("SEP").[2] At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the date of his application. (AR 20.) At step two, he found that Plaintiff has the severe impairments of: "heart disease; hypertension; asthma; bipolar disorder; major depressive disorder; anti-social personality disorder; anxiety disorder; [PTSD]; cognitive disorder; and [ADHD]." (*Id.*)

At step three, the ALJ found that none of Plaintiff's impairments or combinations of impairments meet or medically equal an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P. (AR 20-22.) To assess the severity of Plaintiff's mental impairments at this step, the ALJ used the agency's Psychiatric Review Technique ("PRT") and applied the "paragraph B" criteria to evaluate the effects of Plaintiff's mental impairments on four broad areas of mental functioning. (AR 21-22); 20 C.F.R. § 404.1520a; 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(E). Specifically, the ALJ assessed a moderate limitation: (1) in understanding, remembering or

[2] The five-step SEP requires the ALJ to determine whether:

(1) the claimant engaged in substantial gainful activity during the alleged period of disability;
(2) the claimant has a severe physical or mental impairment or combination of impairments that meets the duration requirement;
(3) any such impairment or combination of impairments meets or equals the severity of an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P;
(4) the claimant can return to his past relevant work; and, if not,
(5) the claimant is able to perform other work that exists in significant numbers in the national economy, considering his residual functional capacity, age, education, and work experience.

20 C.F.R. § 404.1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the burden of proof in the first four steps of the analysis, and the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A finding that the claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

applying information; (2) in interacting with others; (3) in concentrating, persisting or maintaining pace; and (4) in adapting or managing oneself. (AR 21.) Because he did not assess two or more "marked" limitations or one "extreme" limitation, the ALJ found the "paragraph B" criteria were not satisfied.[3] (*Id.*)

The ALJ next assessed Plaintiff's residual functional capacity ("RFC"), finding that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 416.967(b) except: he can have occasional exposure to hazards such as unprotected heights and moving mechanical parts; he can have occasional exposure to atmospheric conditions; he can understand, remember, and carry out simple instructions, make simple decisions, and make simple judgments; he can maintain concentration and pace for two hour periods at a time with routine breaks; he can adapt to occasional changes in a work setting; he can have ***frequent interactions with supervisors and co-workers***; he can have occasional interactions with the public.

(AR 1011-12.) (emphasis added).

In assessing Plaintiff's RFC, the ALJ reviewed the medical and non-medical evidence of record. (AR 22-29.) Specifically, he found "persuasive" the medical opinion of Dr. Mark Gilson, a State Disability Determination Services (DDS) psychological consultant, concerning Plaintiff's mental functioning. (AR 27.) Dr. Gilson's opinion was the only medical opinion concerning Plaintiff's mental functioning that the ALJ found persuasive. (AR 27-29.) Ultimately, the ALJ concluded that the RFC was supported, at least in part, by the persuasive aspects of the prior administrative medical findings. (AR 29.)

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a Kitchen Helper. (AR 29.) The ALJ therefore proceeded to step five, where he found, "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant

[3] The ALJ also determined that the evidence fails to establish a "paragraph C" criterion. (AR 22); *see* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(G).

numbers in the national economy that [Plaintiff] can perform." (*Id.*) Specifically, relying on the VE's testimony at the May 2024 hearing, the ALJ found that Plaintiff can perform the requirements of the representative occupations of merchandise marker, router, and small products assembler at the light exertional level, as well as dowel inspector and final assembler at the sedentary exertional level. (AR 30.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from April 4, 2022, through the date of the decision. (AR 31.)

## III. STANDARD OF REVIEW

The standard of review in a Social Security appeal is whether substantial evidence supports the Commissioner's final decision and whether the Commissioner applied correct legal standards. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the Commissioner applied correct legal standards, his decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the Commissioner's] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks and brackets omitted). Also, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence." *Id.* at 1010.

## IV. PARTIES' ARGUMENTS

The issue in this case concerns an apparent conflict between Dr. Gilson's Section I and Section III findings. Plaintiff contends that the ALJ's treatment of Dr. Gilson's medical opinion constitutes reversible error: that the "ALJ's acceptance of DDS consultant Dr. Gilson's opinions were insufficient because he, without explanation, failed to incorporate [the finding in Section I of] marked limitations  interacting with co-workers without being unduly distracting or exhibiting behavioral extremes." (Doc. 11.  at 18.) Plaintiff contends that the error was not harmless and distinguishes this case from *Martinez v. Kijakazi*, 1:21-CV-0622-JHR (2023), in which the Court affirmed the Commissioner's decision after concluding that the ALJ properly considered the effect of a marked limitation in getting along with coworkers within an RFC limiting the plaintiff to frequent interactions with supervisors and coworkers. (*Id*. at 21-29.)

Defendant responds that the RFC is supported by substantial evidence, pointing to the ALJ's discussion of Plaintiff's reported symptoms and the objective medical evidence at AR 23-26 preceding the ALJ's discussion of Dr. Gilson's opinion at AR 28. (Doc. 19 at 7-8.) Specifically, Defendant points to the ALJ's consideration of Plaintiff's testimony that he had not experienced physical altercations at work, his earlier statements to providers that medication provided some benefit, and his statements in function reports that he did not have problems getting along with others and had never been fired or laid off because of problems getting along with other people. (*Id*. at 12.)

Defendant further contends that the ALJ satisfied the agency's articulation requirements by considering the supportability and consistency of Dr. Gilson's opinion in finding it persuasive and, therefore, did not commit legal error. (*Id*. at 8-11.) Defendant argues the ALJ was not required to discuss the Section I findings in Dr. Gilson's form and, in any event, the ALJ adequately explained his findings concerning Plaintiff's social-interaction limitations. (*Id*. at 13.) Defendant also relies on *Smith* for the proposition that the Court should compare the RFC with the conclusions in Section III rather than with the limitations identified in Section I. (*Id*. at 19.) Accordingly, Defendant maintains that the ALJ adequately accounted for Dr. Gilson's opinion in the RFC and sufficiently explained the reasoning underlying his RFC determination. (*Id*. at 8-11.)

In his Reply, Plaintiff cites *Carver* for the proposition that, where the limitations identified in Section I conflict with the conclusions in Section III, the Section III conclusions cannot properly constitute substantial evidence supporting an ALJ's RFC finding. (Doc. 24 at 5-6.) Plaintiff contends that Defendant failed to meaningfully address the discrepancy between Sections I and III. (*Id*.) Ultimately, Plaintiff maintains that the ALJ failed to explain how the sole mental-function medical opinion he found persuasive supports an RFC permitting frequent interactions with

supervisors and coworkers, particularly with the marked coworker-interaction limitation identified in Section I of Dr. Gilson's assessment. (*Id*. at 7.)

The Court agrees with Plaintiff that the ALJ erred after finding Dr. Gilson's opinion persuasive, by failing either to adequately account for Dr. Gilson's social-interaction findings in the assessed RFC or by explaining why those findings were not incorporated. Moreover, Dr. Gilson's narrative explanation cannot constitute substantial evidence supporting the assessed RFC because it does not adequately account for, or reconcile, the marked limitation in Plaintiff's ability to get along with coworkers identified in the worksheet portion of the MRFCA. Because the Court cannot conclude that this error was harmless, remand is required.

## V. ANALYSIS

### A. Dr. Gilson's Prior Administrative Findings

Dr. Gilson reviewed the evidence of record and completed two reports: a Psychiatric Review Technique (PRT) form and a Mental Residual Functional Capacity Assessment (MRFCA). (AR 98-99, 101-103.) On the PRT form, Dr. Gilson concluded that Plaintiff had moderate limitations in each of the four broad areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (AR 98.)

In the MRFCA, Dr. Gilson performed a more detailed analysis of the broad findings from the PRT form. The MRFCA is divided into three sections. *See* POMS DI § 24510.060.[4] Relevant here, Section I contains summary conclusions rating particular mental activities as "Not

[4] The SSA's Program Operations Manual System ("POMS") is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F. 3d 764, 766 (10th Cir. 1999). The Court must "defer to the POMS provisions unless [it] determine[s] they are arbitrary, capricious, or contrary to law." *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quotation marks omitted).

Significantly Limited," "Moderately Limited," or "Markedly Limited," while Section III contains a "narrative discussion of the individual's capacities and limitations." (AR 102-103); POMS DI §§ 24510.063(B)(1)-(3), 24510.065(B).

In Section I, Dr. Gilson found Plaintiff "markedly" limited in his "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (AR 102.) A "marked" limitation is the most severe rating available on the MRFCA and means that "the individual cannot usefully perform or sustain the activity." POMS DI § 24510.063(B)(3). In the narrative portion of Section III, Dr. Gilson initially wrote, "See PRT. See below." (AR 102.) On the following page, he then stated: "The claimant does have the ability to relate appropriately to co-workers and supervisors with minimal public contact." (AR 103.)

The ALJ quoted Dr. Gilson's Section III narrative finding in his decision and found Dr. Gilson's opinion concerning Plaintiff's mental functioning persuasive. In explaining that finding, the ALJ stated:

> The undersigned finds the DDS reconsideration opinion as to the claimant's mental function to be persuasive. As discussed above, mental status examinations have at times included findings of irritability, anxiousness, over productive speech, racing thoughts, and deficits in attention and concentration. (*See for examples:* Exhibits 10F; 15F; 16F, pp. 1-4; 17F, pp. 5-6). During the September 2023 mental consultative examination, he recalled 3/3 items immediately and 2/3 items with a delay. Although he made errors while doing serial sevens, he could recall 7 digits forward and 3 digits backward, and could compute simple math equations. He also attained a score of 27 out of 30 on the mini mental status examination performed as part of the consultative examination. Given the extent of the evidence and the claimant's acknowledged activities that include driving, playing on his PlayStation, and using his Galaxy smart phone, the undersigned finds support for the DDS opinion. The opinion is well-supported by the narrative contained within the disability determination explanation and is consistent with the aforementioned longitudinal evidence of record. As such, the opinion as to the claimant's mental function is reflected in the above residual functional capacity assessment that provides for simple work and maintaining concentration and pace for two-hour periods at a time, occasional changes in a work setting, ***frequent interactions with supervisors and coworkers***, and occasional interactions with the public.

(AR 27-28.) (emphasis added).

In summary, Dr. Gilson found in Section I a marked limitation in Plaintiff's ability to get along with coworkers, then stated in Section III that Plaintiff has the ability to relate appropriately to co-workers, and, in finding this opinion persuasive, the ALJ formed an RFC limiting Plaintiff to "frequent interactions with supervisors and coworkers." In this Circuit, there is a line of cases relying on the Tenth Circuit's published opinion in *Smith*, as well as the POMS instructions, holding that an ALJ may find an MRFCA persuasive and then rely solely on the Section III findings in assessing the RFC. However, there is another line of cases holding that, when the Section I and Section III findings contradict each other, an ALJ may not rely solely on the Section III findings without acknowledging and explaining the discrepancy or otherwise incorporating the Section I limitation into the RFC. These cases are discussed below.

B. <u>Case Analysis</u>

In the published Tenth Circuit case of *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016), a consultative physician completed a form similar to the MRFCA completed by Dr. Gilson here. In *Smith*, the psychologist found moderate limitations in nine Section I categories, including the category at issue here.[5] *Smith*, 821 F.3d at 1268. In Section III, the psychologist stated that the claimant could "(1) engage in work that was limited in complexity and (2) manage social interactions that were not frequent or prolonged." *Id.* The ALJ, in turn, assessed that the claimant "could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks." *Id.* at 1269.

---

[5] (1) Maintain concentration, persistence, and pace, (2) Remain attentive and keep concentration for extended periods, (3) Work with others without getting distracted, (4) Complete a normal workday and workweek without interruption for psychologically based symptoms, (5) Perform at a consistent pace without excessive rest periods, (6) Accept instructions and respond appropriately to criticism by supervisors, (7) Get along with coworkers or peers without distracting them or engaging in behavioral extremes, (8) Respond appropriately to changes in the workplace, and (9) Set realistic goals or independently plan.

On appeal, the plaintiff argued that the ALJ failed to incorporate the psychologist's moderate Section I limitations into the RFC.. *Id.* at 1269 n.2. In response, the Court stated, "this is the wrong question." *Id.* According to the Court, "[The psychologist's] notations of moderate limitations served *only as an aid* to her assessment of residual functional capacity. We compare the administrative law judge's findings to [the psychologist's] opinion on residual functional capacity, *not* her notations of moderate limitations." *Id.* (emphasis added); *see also* POMS DI § 24510.060(B)(2)(a) ("**Section I is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment.**") (emphasis in original).

In rejecting the plaintiff's challenge, the Court cited an unpublished Tenth Circuit case *Lee v. Colvin*, 631 Fed.Appx. 538 (10th Cir. 2015).[6] In *Lee*, the plaintiff similarly argued that the ALJ had failed to expressly incorporate specific moderate Section I limitations into the RFC that had been identified by a psychologist whose opinion the ALJ had given "great weight." *Id.* at 541. The Court rejected that argument because the ALJ had adopted the narrative portion of the psychologist's RFC assessment, which accounted for the moderate limitations identified in Section I even though the narrative did not repeat them verbatim. *Id.* at 541–42.

In *Smith*, the Court adopted the approach taken in *Lee* and concluded:

> The administrative law judges in *Lee* and in our case did not repeat the moderate limitations assessed by the doctor. But both administrative law judges incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities.

*Smith*, 821 F.3d at 1269.

[6] In the Tenth Circuit, unpublished decisions are not binding precedent but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

Thus, *Smith* establishes that an ALJ need not mechanically repeat each limitation identified in Section I when the Section III narrative adequately translates those findings into work-related functional limitations. But *Smith* and *Lee* did not involve the conflict presented here. In both cases, the Section III narrative accounted for, rather than contradicted, the Section I limitations. For example, in *Smith*, the psychologist found a moderate limitation in the plaintiff's ability to get along with coworkers, while the corresponding Section III narrative stated that the plaintiff could "manage social interactions that were not frequent or prolonged." *Id.* at 1268. The narrative therefore translated the social limitation into a corresponding restriction on the frequency and duration of interactions.

Here, by contrast, Dr. Gilson found Plaintiff "markedly" limited in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, but his Section III narrative stated that Plaintiff "does have the ability to relate appropriately to co-workers and supervisors with minimal public contact." (AR 102-03.) Unlike *Smith* and *Lee*, the Section III narrative does not merely omit or restate the Section I limitation in different terms; it appears to reach a materially different conclusion regarding Plaintiff's ability to interact appropriately with coworkers.

The issue, therefore, is not whether the ALJ was required to repeat Dr. Gilson's Section I finding verbatim in the RFC. Rather, it is whether the ALJ could rely on a Section III narrative that was apparently inconsistent with a marked limitation identified by the same medical source without acknowledging or resolving the discrepancy.

This distinction is important because both *Smith* and *Lee* emphasized that the Section III narratives accounted for the limitations identified in Section I and that the ALJs demonstrably incorporated the limitations into the RFCs. Neither case involved a situation in which Section I

identified a severe "marked" limitation, Section III negated that specific limitation, and the ALJ failed to incorporate the limitation into the RFC. Accordingly, while *Smith* instructs that the RFC should be compared with Section III, it does not resolve whether an ALJ may rely on a Section III narrative that is itself directly inconsistent with a limitation identified by the same medical source in Section I without either the doctor or the ALJ acknowledging or explaining the discrepancy.

Some cases, relying on *Smith* and the POMS, have taken the position that the Section III conclusion is the only portion of the MRFCA that the ALJ must address and account for in assessing the RFC.[7] This is the approach Defendant advances. (*See* Doc. 19 at 13-14.) Other cases have held that when a Section I limitation conflicts with the Section III conclusion, the ALJ cannot

---

[7] *Rush* held that the ALJ was not required to either account for doctor's Section I findings or explain why he failed to do so. *Rush v. Saul*, 389 F. Supp. 3d 957 (D.N.M. 2019) (Yarbrough, J.) *Rush* reasoned:

> Based on *Smith*, the Court rejects [plaintiff's] argument that, once the ALJ gave great weight to [the doctor's] opinion, the ALJ was required to either adopt [the doctor's] Section I moderate limitations or, for each moderate limitation, explain why he did not adopt that limitation. *Smith* mandates affirmance here because the doctor's narrative RFC and the ALJ's RFC are consistent. Thus, even though the ALJ did not discuss all of [the doctor's] Section I moderate limitations, he did not commit error.

*Id*. at 969. *Rush* also states in a footnote:

> [Plaintiff] cites previous opinions by this Court which similarly held that a consulting physician must account for all worksheet moderate limitations in his narrative RFC, and the ALJ may not overlook inconsistencies between the two. Doc. 19 at 17-18; *Chavez v. Colvin*, No. 14-1067 SCY, 2016 WL 10179283, at *6 (D.N.M. July 8, 2016); *Vamvakerides v. Colvin*, No. 14-00897 SCY, 2016 WL 10538097, at *6-7 (D.N.M. Apr. 7, 2016). On further consideration, as explained above, cases like *Chavez, Vamvakerides*, and *Carver* cannot be reconciled with the published Tenth Circuit opinion in *Smith*.

*Id*. at 698 n.7.

*See also Leah P. v. Kijakazi*, No. 21cv0407 SCY, 2022 WL 3042928, at *5–6 (D.N.M. Aug. 2, 2022) (Yarbrough, J.) (the court citing *Smith* held that an ALJ's RFC need only be compared to Section III findings, regardless of the content of Section I); *see also Padilla v. Berryhill*, No. 17cv0329 GJF, 2018 WL 3830930, at *15 (D.N.M. Aug. 13, 2018) (Fouratt, J.) ("Correspondingly, the Tenth Circuit explained that the court's function is not to compare the ALJ's findings to a physician's 'notations of moderate limitations,' but rather to compare the ALJ's findings to the physician's opinion.").

simply disregard the Section I limitation.[8] This is the approach Plaintiff advances. (*See* Doc. 9 at 18-21.)

C. Resulting Case Law

Consistent with *Smith*, an ALJ may rely exclusively on a consultant's Section III narrative when that narrative is consistent with and adequately encapsulates the limitations identified in Section I. *Fannin v. Comm'r, SSA*, 857 F. App'x 445, 447-48 (10th Cir. 2021) (unpublished); *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished); *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) (unpublished); *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (unpublished); *Kantor v. Kijakazi*, Civ. No. 21-717, 2023 WL 2538786, at *5 (D.N.M. Mar. 16, 2023) (Khalsa, J.) (collecting cases); *see also Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("[Section I] observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored. True, in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations.").

[8] *Carver v. Colvin*, 600 F. App'x 616, at 619 (10th Cir. 2015) (unpublished) ("Thus, if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the [plaintiff's] ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding."); *Ortiz v. O'Malley*, No. 1:22-CV-00660-LF, 2024 WL 278290, at *7 (D.N.M. Jan. 25, 2024) (Fashing, J.) (collecting cases) (acknowledging *Rush*, *Leah*, and *Padilla* supporting Defendant's position, and *Silva*, *Mills*, *Vienna*, *Thompson*, *Kantor*, *Jensen*, *Haga*, and *Parker* supporting Plaintiff's position); *Ortiz v. Kijakazi*, No. CV 21-1016 KK, 2023 WL 2538834, at *9–10 (D.N.M. Mar. 16, 2023) (Khalsa, J.) (Remand was required where the ALJ found a Section I moderate limitation generally persuasive but then failed to either explain why she rejected it or otherwise incorporate it into the RFC. The court acknowledged the "lack of consistency is likely a product of divergent rationales offered by the Tenth Circuit as it grapples with whether and how an RFC assessment must incorporate limitations noted in the worksheet portion of an MRFCA."); *John William Keith B. v. Bisignano*, No. 1:24-cv-01196 JHR, Doc. 20 at 20 (D.N.M. Sep. 22, 2026) (Ritter, J.) ("When, as here, an ALJ assessing an RFC fails to either adequately account for a moderate limitation found by a psychological consultant or explain why he rejects it, the ALJ leaves the Court without a sufficient basis to determine that appropriate legal principles have been followed."); *See also Pinto v. Kijakazi*, Civ. No. 20-1095, 2022 WL 15273064, at *6 (D.N.M. Oct. 27, 2022) (Ritter, J.) (holding that ALJ erred "by formulating a residual functional capacity … which was inconsistent with the medical and agency findings he purported to adopt as persuasive").

Conversely, "if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the [plaintiff's] ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver*, 600 F. App'x at 619; *see also Carrillo v. Saul*, Civ. No. 19-292, 2020 WL 6136160, at *10 (D.N.M. Oct. 19, 2020) (Sweazea, J.) (noting that an internally inconsistent opinion "cannot be substantial evidence that supports the ALJ's assessment of [the p]laintiff's RFC").

Thus, Section I limitations are "evidence that the ALJ must consider in making ... independent findings." *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1159 (D.N.M. 2016). When an ALJ does not clearly account for a Section I limitation, this Court must analyze whether the corresponding Section III narrative "adequately encapsulates" that limitation. *Carver*, 600 F. App'x at 619. If it does not, and the ALJ does not explain the omission, the ALJ has committed legal error requiring remand. *See Parker v. Comm'r, SSA*, 772 F. App'x 613, 615 (10th Cir. 2019) ("If the agency had decided to omit particular limitations embodied in ... medical opinions, the agency needed to explain the omissions.") (*citing Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)); *see also Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) ("Failure to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.") (internal quotation marks and brackets omitted).

D. Analysis

*i. The ALJ did not incorporate the Section I marked limitation into the RFC.*

*Smith* acknowledges that although the ALJs in *Smith* and *Lee* did not repeat the doctors' moderate limitations verbatim, they incorporated those limitations by stating how the plaintiffs were limited in performing work-related activities. 821 F.3d at 1269. Defendant therefore argues

that, under *Smith*, the ALJ could—and did—incorporate Dr. Gilson's Section I findings without repeating them verbatim. (Doc. 19 at 13-14.) But the Court does not see how the ALJ incorporated the marked limitation.

Defendant's argument does not address the relevant distinction: Dr. Gilson identified a marked, not moderate, limitation in Plaintiff's ability to get along with coworkers. The RFC nevertheless permits "frequent interactions with supervisors and co-workers." (AR 1012.) The ALJ offered no explanation on how that restriction incorporates or otherwise accounts for Dr. Gilson's marked limitation.

The omission is significant because the POMS identifies "[t]he ability to get along with coworkers or peers without (unduly) distracting them or exhibiting behavioral extremes" as a mental ability needed for any job. POMS DI § 25020.010(B)(2)(c). A marked limitation in that ability therefore cannot be deemed accounted for merely by limiting Plaintiff to frequent interactions with supervisors and coworkers, particularly absent any explanation connecting the RFC limitation to Dr. Gilson's marked finding. *See* 20 C.F.R. §§ 416.920(a)(4), 416.945(a)(1), 416.946(c) (the RFC represents the most Plaintiff can do despite his impairments).

*ii. The Section III narrative does not adequately encapsulate the Section I finding.*

Dr. Gilson's Section III statement that Plaintiff "does have the ability to relate appropriately to co-workers and supervisors with minimal public contact" (AR 103) does not describe the effect of the marked Section I limitation on Plaintiff's ability to perform work-related activities. To the contrary, it appears to conflict directly with the Section I finding that Plaintiff is markedly limited in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *See Ortiz v. O'Malley*, No. 1:22-CV-00660-LF, 2024 WL 278290, at *7 (D.N.M. Jan.

25, 2024); *see also Saiz v. Kijakazi*, No. 22cv0742 DHU-KK, 2023 WL 5368889, at *11 (D.N.M. Aug. 22, 2023).

A Section III narrative that, without articulated reasoning, includes no functional limitations in an area does not "adequately encapsulate" a Section I marked limitation in that same area. *Carver*, 600 F. App'x at 619.

*iii. The ALJ failed to address the discrepancy.*

The ALJ did not address the apparent conflict in the paragraph in which he found Dr. Gilson's opinion persuasive. Instead, he relied on findings from a mental consultative examination and Plaintiff's activities of driving, playing on his PlayStation, and using his Galaxy smart phone. (AR 27-28.) None addresses Plaintiff's ability to get along with coworkers, and the ALJ did not explain how those findings supported the conclusion that Plaintiff could sustain frequent coworker interactions despite Dr. Gilson's marked limitation.

Nor did the ALJ explain his statement that "[t]he opinion is well-supported by the narrative contained within the disability determination explanation and is consistent with the aforementioned longitudinal evidence of record." (AR 28.) Defendant similarly asserts that "the ALJ [] found Dr. Gilson provided a narrative discussion that supported his opinion." (Doc. 19 at 11.) Neither identifies what evidence supports Dr. Gilson's Section III conclusion that Plaintiff could relate appropriately to coworkers or explains how that conclusion can be reconciled with the marked Section I limitation. In effect, the ALJ and Defendant rely on the Section III conclusion as support for itself without addressing the inconsistency between Sections I and III.

*iv. The error was not harmless.*

The Tenth Circuit has cautioned that courts "apply harmless error analysis cautiously in the administrative review setting." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

Harmless-error analysis may apply where, based on material the ALJ considered but improperly analyzed, the Court can confidently conclude that no reasonable administrative factfinder could have reached a different result. *Id.* at 733–34. But courts cannot supply a missing finding on legal or evidentiary matters the ALJ did not consider because doing so risks impermissibly providing a post hoc justification for the agency's action. *Dye v. Barnhart*, 180 F. App'x 27, 31 (10th Cir. 2006).

Here, if the ALJ had properly considered and addressed Dr. Gilson's marked limitation in Plaintiff's ability to get along with coworkers, the RFC could have been more restrictive. The POMS identifies that ability as one required for any job. POMS DI § 25020.010(B)(2)(c). And the VE testified that a significant number of jobs existed in the national economy if, in part, Plaintiff could sustain frequent coworker interactions.[9] (AR 65-67.) The record therefore does not establish that the marked limitation would necessarily have no vocational consequence. Because the ALJ did not explain how he accounted for the limitation, the Court cannot determine whether a more restrictive RFC was warranted. The error is therefore not harmless.

[9] *Duran v. Berryhill*, Civ. No. 18-734 SMV, 2019 WL 1992103, at *4 (D.N.M. May 6, 2019) (concluding an ALJ's RFC finding of "frequent interactions with supervisors" did not account for moderate limitations in the abilities to interact with supervisors and to accept instructions from and respond appropriately to criticism from supervisors); *Vialpando v. Comm'r, Soc. Sec. Admin.*, Civ. No. 19- Civ. No. 2655 STV, 2021 WL 1222493, at *2 (D. Col. Apr. 1, 2021) ("Here, the Court found the ALJ erred by simultaneously adopting Dr. Frommelt's conclusions that Plaintiff was moderately impaired in dealing with others but nonetheless crafting an RFC that allowed for frequent interaction with coworkers and supervisors"); *Macquire v. Comm'r of Soc. Sec.*, Civ. No. 21-72 CDB, 2023 WL 8242069, at *6 (E.D. Cal. Nov. 28, 2023) ("Here, the RFC limits Plaintiff to 'frequent, but not constant, face-to-face interaction with supervisors, coworkers, and the public.' This limitation fails to account for Dr. Stafford's moderate limitation to interact with co-workers, supervisors, and the public." (internal citation omitted)); *Donna W. v. Kijakazi*, Civ. No. 21-11285, 2023 WL 869097, at *9 (D.N.J. Jan. 27, 2023) (concluding an ALJ's RFC assessment allowing frequent interaction with supervisors and coworkers was inconsistent with another RFC finding of moderate limitation in interacting with others); *Joel B. v. Comm'r of Soc. Sec. Admin*, Civ. No. 20-110 JCF, 2022 WL 16709722, at 8–9 (N.D. Ga. Feb. 15, 2022) (concluding an ALJ's RFC assessment allowing "frequent contact" with supervisors did not adequately account for previously assessed moderate limitations in interacting with supervisors). This is because "frequent" in this context "means occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *6. In other words, "frequent" means up to six hours of an eight-hour workday. *Id.*

Both Plaintiff and Defendant discuss *Martinez*. (Doc. 9 at 21-26, Doc. 19 at 14.) *Martinez* does not change this analysis. There, a DDS consultant found a marked social-interaction limitation based on an evaluation that was internally consistent and did not contain the MRFCA's Section I worksheet and Section III narrative. *Martinez v. Kijakazi*, No. 1:21-CV-0622-JHR, 2023 WL 3318743, at *6 (D.N.M. May 9, 2023) (Ritter, J.). The ALJ specifically addressed the marked limitation in explaining why she found the consultant's opinion generally persuasive and assessed an RFC limiting the plaintiff to frequent interactions with supervisors and coworkers. *Id.* at *6–7. Thus, *Martinez* did not involve a Section I limitation that directly conflicted with a Section III conclusion or an ALJ who failed to address the limitation.

Although *Martinez* might suggest that a marked social limitation—including a marked social limitation involving coworkers—can coexist with an RFC permitting frequent coworker interactions, the critical distinction is that the ALJ there expressly considered and addressed the marked limitation when formulating the RFC. *Id.* at *7. Here, by contrast, the ALJ never addressed Dr. Gilson's marked coworker limitation. Concluding that the RFC nevertheless adequately accounts for that limitation would require speculation about what the ALJ considered and why. Absent an explanation from the ALJ as to how he accounted for this vocationally relevant marked limitation, the Court will not speculate that he did. *Peterson v. Saul*, Civ. No. 19-486, 2020 WL 1911567, at *9 (D.N.M. Apr. 20, 2020) (Robbenhaar, J.). The Court therefore finds that the ALJ's error was not harmless and warrants remand.

*v. Conclusion*

Because the Section III narrative does not "adequately encapsulate" Dr. Gilson's Section I finding of a marked limitation, and because the ALJ neither accounted for that limitation in the RFC nor acknowledged and explained the apparent conflict between Sections I and III, the ALJ

erred. *See Carver*, 600 F. App'x at 619. The error is not harmless because the Court cannot determine whether the ALJ rejected the marked limitation, found it adequately addressed by the Section III narrative, or otherwise concluded that it did not affect Plaintiff's ability to perform work-related activities or sustain competitive employment. *See Ortiz v. Kijakazi*, No. CV 21-1016 KK, 2023 WL 2538834, at *9 (D.N.M. Mar. 16, 2023) (remanding where the ALJ failed to incorporate a Section I moderate limitation or explain its omission and noting that "with few exceptions, the weight of persuasive authority in this District supports reversing on this ground"). Without a logical bridge connecting the internally inconsistent persuasive medical opinion to the RFC, the Court cannot meaningfully review the ALJ's decision. *Joellen M. v. Dudek*, 2025 WL 973608, at *5 (D.N.M. Mar. 31, 2025) (Ritter, J.).

**VI. CONCLUSION**

For all of the above reasons, Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 9) is GRANTED and this matter is REMANDED to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

HON. JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE